EncoreVet Group LLC v Animal Imaging Partners, Inc. (2026 NY Slip Op 50266(U))

[*1]

EncoreVet Group LLC v Animal Imaging Partners, Inc.

2026 NY Slip Op 50266(U)

Decided on March 5, 2026

Supreme Court, Saratoga County

Kupferman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2026
Supreme Court, Saratoga County

EncoreVet Group LLC, Plaintiff,

againstAnimal Imaging Partners, Inc., A. Jerome DiGiacobbe, Jr., 
 August DiGiacobbe, III, Sean Gally, and Ken Ford, Defendants.

Index No. EF20241156

WAITE & ASSOCIATES, P.C.Stephen J. Waite, Esq. 
Mary C. Kenney, Esq.P.O. Box 1447Slingerlands, New York 12159Attorneys for the Plaintiff, EncoreVet Group LLCLUIBRAND LAW FIRM, PLLCKevin A. Luibrand, Esq.Elizabeth Harmon, Esq. (of counsel)950 New Loudon Road, Suite 270Latham, New York 12110Attorneys for the Defendant, August DiGiacobbe, III

Richard A. Kupferman, J.

The plaintiff commenced this action seeking to recover funds that it paid to a corporation in connection with its contract for the purchase of an MRI Unit. The complaint asserts four causes of action against the defendant corporation and its representatives, specifically claims for (1) fraud, (2) unjust enrichment, (3) breach of fiduciary obligation, and (4) conversion. The issue presented is whether the complaint should be dismissed as against one of the individual defendants.
 BackgroundIn or around July 2021, the Defendant, Animal Imaging Partners, Inc. ("AIP") provided a [*2]written proposal to Veterinary Care Specialists, P.C. for the sale of a Magnus Vet-MRI System for use at a veterinary clinic (the "MRI Unit"). Shortly thereafter, the Plaintiff, EncoreVet Group, LLC ("Encore") acquired the assets of Veterinary Care Specialists, P.C. At the end of August 2021, Encore (as or in place of Veterinary Care Specialists, P.C.) and AIP executed the proposal ("Contract").
Pursuant to the Contract, Encore agreed to purchase the MRI Unit from AIP based on the terms set forth in the proposal. The purchase price of $399,000 was to be paid by Encore to AIP in four installments, as follows: (1) "30% with customer acceptance"; (2) "40% upon shipping"; (3) "20% upon delivery"; and (4) "10% upon acceptance or first use" (NYSCEF Document No. 2, at p. 7 [emphasis omitted]).[FN1]
The delivery date was "TBD" (NYSCEF Document No. 2, at p. 7).
The Contract specifies that it was "intended to be the complete and exclusive statement of the terms and conditions of the contract"; that "[n]o prior proposals, statements or course of dealing [would] be part of the contract"; and that "the contract . . . [could] be modified only in writing signed by authorized representatives of both parties" (NYSCEF Document No. 2, at p. 8). The Contract similarly states that its terms constituted "the entire understanding and agreement by and between the parties" and "supersede[d] any previous understandings or agreements between the parties whether written or oral"; and that any additional terms had to be in writing and signed by the parties (NYSCEF Document No. 2, at p. 11).
The Contract further provides that AIP would not be "liable for delays in performance or delivery due to a cause beyond its reasonable control"; and that it would be "excused from performing its obligations arising from any delay or default caused by events beyond its reasonable control including, but not limited to, acts of God, acts of third parties, acts of the other party, acts of any civil or military authority, fire, floods, war, embargoes, labor disputes, acts of sabotage, riots, accidents, delays of carriers, subcontractors or suppliers, voluntary or mandatory compliance with any government act, regulation or request, shortage of labor, materials or manufacturing facilities" (NYSCEF Document No. 2, at p. 11).
The Contract also includes a provision which limits liability against "AIP and its representatives" and requires that "[a]ny claim related to this contract . . . be covered solely by commercial legal principles" (NYSCEF Document No. 2, at p. 10). In addition, the Contract provides that "all rights and remedies" are to be governed by Pennsylvania law and that "[a]ny controversy or claim arising out of or relating to [the] contract, or the breach thereof, shall be settled by the Court of Common Pleas of Allegheny County, Pennsylvania" (NYSCEF Document No. 2, at p. 11).[FN2]

Under the Contract, Encore had the right to cancel the order prior to delivery, however, Encore would have to pay certain cancellation charges to cancel the order, including, but not limited to, "the costs to manufacture the product" and "the costs to return or cancel any product ordered from a third party" (NYSCEF Document No. 2, at pp. 8 & 14). In addition, the Contract includes a buy-back provision with a formula for AIP to buy back the MRI Unit at a reduced price after the product was paid for and used (NYSCEF Document No. 2, at p. 3).
After the agreement was executed, AIP provided an invoice for the first payment (30% of the purchase price). The invoice, dated August 31, 2021, contains AIP's name at the top of it and requests the payment to be wired to AIP's bank account. Encore's representatives have asserted that Encore paid this first installment (30% totaling $119,700) by check dated October 1, 2021. They have further provided a copy of the check, which was made payable to AIP.
On or about December 23, 2021, AIP provided a second invoice in the amount of $159,600. The invoice was for the second installment payment for the MRI Unit (40% of the purchase price), and the invoice indicated that the payment was due on January 15, 2022. The invoice requested for the funds to be either wired to AIP's bank account or that a check be mailed to AIP. The invoice (the copy provided by Encore's representative) contains a handwritten notation, "paid on 1/14/2022." Encore's representatives, however, have since clarified that Encore paid AIP this second installment of $159,600 by check dated January 18, 2022. The check was similarly made payable to AIP.
For some reason, the MRI Unit was never shipped at the time of the second payment. According to Encore's representative, a representative from AIP contacted her several months after Encore made the payment and asked her to provide information about where to ship the MRI Unit. According to another Encore representative, he first learned in February 2023 that the MRI Unit had not been delivered.
Upon conducting further inquiries, on February 21, 2023, Encore's representatives were allegedly informed by AIP's representatives that the machine was still at the manufacturer in China.[FN3]
On February 23, 2023, Encore's representative informed AIP by email that Encore wanted to cancel the order and obtain a refund. Encore's representative first asserted that "the negligence in shipping seems warranting of a full refund" and then proceeded to request a partial refund (most of the funds) based on the buy-back provision (which contemplated that Encore would first pay the full purchase price). Encore's representatives also informed AIP that the needs of the veterinary clinic had changed, and that it no longer required the machine. AIP disagreed with Encore's proposals and offered alternative solutions to resolve the dispute. [*3]Despite their discussions, the entities were unable to agree on a resolution.
Eventually, Encore commenced this action in Saratoga County, New York (the location of its principal place of business) asserting four causes of action against AIP and its representatives, specifically for (1) fraud, (2) unjust enrichment, (3) breach of fiduciary obligation, and (4) conversion. When the defendants failed to answer the complaint or otherwise appear in the action, Encore applied for and obtained a default judgment against all the defendants except for the moving defendant, August DiGiacobbe III. The moving defendant now seeks to dismiss the complaint as against him on several grounds, including based on his assertion that the complaint fails to state a cause of action against him.

Analysis
The Court will first consider whether the complaint states a cause of action against the moving defendant prior to addressing the alternative grounds asserted in support of dismissal. "When considering whether to dismiss a complaint pursuant to CPLR 3211 (a) (7), the pleading is to be given a liberal construction, the allegations contained within it are assumed to be true and the plaintiff is to be afforded every favorable inference" (Sandman v City of Ithaca, 237 AD3d 1392, 1392-1393 [3d Dept 2025] [internal quotation marks, brackets, and citations omitted]). This liberal standard, however, cannot "save allegations that consist of bare legal conclusions or factual claims that are flatly contradicted by documentary evidence or are inherently incredible" (id. at 1393 [internal quotation marks and citations omitted]).
Regarding the first cause of action based on fraud, Encore essentially contends that AIP never intended to perform its contractual obligations, that AIP falsely represented that it would use the first payment towards the manufacturing cost, and that AIP falsely issued the second invoice for payment at a time when the MRI Unit was not yet manufactured and ready for shipping. Specifically, the fraud claim alleges that "AIP [made statements] prior to the execution of the Contract that AIP would use the first installment paid by Encore to make a downpayment against the cost of manufacturing the MRI Unit"; that AIP falsely "represented to Encore in December of 2021 that the MRI Unit had been fully manufactured and was ready for shipment"; that "AIP [in February 2023] failed to provide any information regarding the manufacture and shipment of the MRI Unit"; and that "AIP was unable to provide any reasonable explanation as to why the MRI Unit was not delivered . . . following Encore's payment of the second installment."
The problem with these allegations is that they do not explain the moving defendant's involvement in the underlying transaction or explain what he did that was fraudulent. Nor are any details alleged upon which one could infer that the moving defendant played any role in the alleged wrongdoing. On the contrary, the only detailed allegation made against the moving defendant is that he was an "owner and/or officer/director" of AIP (a corporation). The remaining allegations against the moving defendant are asserted in the collective (as against all the defendants generally), without providing any details as to what, if anything, the moving defendant did. As these allegations are conclusory and improperly rely on group pleading, they fail to satisfy the basic pleading requirements (see CPLR 3013; 3016; Principia Partners LLC v. Swap Fin. Group, LLC, 194 AD3d 584, 584 [1st Dept 2021]; see also Sandman, 237 AD3d at 1392-1393).
Contrary to Encore's contention, this is not a case where it is impossible to state the supporting circumstances in detail or where the facts are within the peculiar knowledge of the moving defendant. As explained above, the complaint sets forth the supporting circumstances in [*4]detail; it just uses vague language in describing them and omits relevant facts as to who engaged in the allegedly fraudulent behavior. In fact, Encore previously filed two affirmations from its representatives in support of its motion seeking a default judgment. In the affirmations, these representatives explained their interactions with each defendant and identified the specific defendants who committed the alleged fraudulent acts. They further provided emails and other documents evidencing the involvement of each defendant. Such involvement was further summarized by Encore's litigation counsel in a memorandum of law filed on the default motion. Encore therefore possesses a treasure trove of facts; it has simply elected not to plead them.
Further, while a court may "freely consider" affirmations submitted by a plaintiff in deciding a motion to dismiss under CPLR 3211(a)(7), the affirmations from Encore's representatives similarly fail to link the moving defendant to any wrongdoing (Leon v Martinez, 84 NY2d 83, 88 [1994]). Rather, these representatives allege that the moving defendant interacted with them after the dispute arose. In addition, they provided two emails from March 2023 on which the moving defendant was copied, as well as one email that was allegedly sent in May 2023 by the moving defendant to Encore's representative, which reads:
"I hope you doing well. I wanted to follow up on your last email as we have been diligently working on placing the Magnus MRI unit since our last conversation. We are working now with a fee per scan site and hope to have an update for you shortly.Feel free to contact either of us if anything else is needed, and I look forward to speaking again soon."The affirmations and the emails provided by Encore's representatives do not provide any basis to infer that the moving defendant engaged in any wrongdoing. Rather, they simply evidence that the moving defendant was involved in the discussions after the dispute occurred and that he attempted to find a mutually agreeable solution. There was nothing fraudulent about this. Nor has Encore alleged any fraud with specificity as it relates to these emails and the discussions with the moving defendant. As such, even if the moving defendant engaged in these communications after the parties' dispute arose and sent/received these emails, such facts are insufficient to state a claim for fraud against him (see e.g. Greg Beeche, Logistics, LLC v Cross Country Constr., LLC, 210 AD3d 1158, 1162 [3d Dept 2022]; Doller v Prescott, 167 AD3d 1298, 1300-1301 [3d Dept 2018]; Leonard v Gateway II, LLC, 68 AD3d 408, 409 [1st Dept 2009]).
In addition, the second (unjust enrichment), third (breach of fiduciary obligation), and fourth (conversion) causes of action should be dismissed against the moving defendant. The unjust enrichment and conversion claims are utterly refuted by the allegations in the complaint, as well as the banking records provided by Encore's representatives, that demonstrate that Encore paid the funds to AIP, not the moving defendant. In addition, the breach of fiduciary obligation claim is similarly untenable given that Encore has failed to allege any facts upon which one could find that the moving defendant had any fiduciary relationship with Encore.
Encore nevertheless contends that the motion should be denied as premature so that it can engage in discovery to obtain evidence to substantiate its claims. A motion to dismiss may be denied pending further discovery pursuant to CPLR 3211(d). Specifically, this provision provides as follows:
"Facts Unavailable to Opposing Party. Should it appear from affidavits submitted in opposition to a motion [to dismiss] that facts essential to justify opposition may exist but [*5]cannot then be stated, the court may deny the motion, allowing the moving party to assert the objection in his responsive pleading, if any, or may order a continuance to permit further affidavits to be obtained or disclosure to be had and may make such other order as may be just" (CPLR 3211[d] [emphasis added]).To obtain such relief, a plaintiff is "obliged to provide some evidentiary basis for its claim that further discovery would yield material evidence and also demonstrate how further discovery might reveal material facts in the movant's exclusive knowledge" (Rochester Linoleum & Carpet Ctr., Inc. v Cassin, 61 AD3d 1201, 1202 [3d Dept 2009] [internal quotation marks and citations omitted]). A plaintiff, however, may not rely solely upon speculation or an unsubstantiated hope of discovering something relevant to its claims (see e.g. Greg Beeche, Logistics, LLC, 210 AD3d at 1161; Leonard, 68 AD3d at 410).
Here, Encore has provided an affirmation from its legal counsel, which sets forth two grounds for requesting additional discovery against the moving defendant. First, Encore's counsel asserts that additional discovery is needed to ascertain the role of the moving defendant with AIP because he has held himself out as an executive officer and vice president of AIP. Second, Encore's counsel asserts that "discovery will demonstrate the corporate dealings of . . . AIP as well as certain related business entities, specifically an entity known Extremity Imaging Partners, Inc. which holds itself out as doing business as Animal Imaging Partners, Inc." Encore's counsel further contends that these two entities, as well as one of the other individual defendants named in this lawsuit, "have been the subject of numerous lawsuits, including actions for fraud, and which are subject to multiple money judgments for millions of dollars."
Even assuming for the sake of argument that Encore were to establish these facts with discovery, they do not provide any basis upon which one could conclude that the moving defendant committed any torts or wrongful acts against Encore. As against the moving defendant, such discovery would merely establish that he may be an owner and/or officer/director of AIP, which is insufficient by itself to impose liability against him. Moreover, additional discovery is not necessary to ascertain whether any of these other lawsuits have involved the moving defendant. Encore's counsel has a list of all the lawsuits and is more than capable of reading the dockets and inquiring with the counsel for the plaintiffs in those actions to determine whether any of them are relevant to the moving defendant.
Further, Encore has not offered any evidence linking the moving defendant to the commission of the alleged wrongs or the receipt of the funds. In addition, the underlying transaction concerned an arm's length contract negotiation between business entities, the sale of an MRI Unit, and the payment of two invoices. These are not matters upon which one could infer that the alleged wrongdoing was the product of a large-scale corporate conspiracy or that all the owners and officers in the corporation must have been aware that something was afoul with this particular transaction. Under these circumstances, allowing discovery to proceed would essentially subject every owner and officer of a corporation to lengthy and burdensome litigation any time a plaintiff alleges that the funds it paid to a corporation were obtained by the corporation fraudulently.
In addition, other reasons besides fraud may have caused the problem. Among other things, the Contract identifies a different entity as the purchaser; the product was manufactured overseas; Encore apparently never followed up to confirm whether the product had been shipped; and Encore no longer wanted to accept the MRI Unit by February 2023, at least in part, [*6]because its needs changed. In fact, Encore's representative initially attributed the problem to "negligence" rather than any large-scale corporate fraud. These circumstances, while not dispositive, further highlight that Encore has provided only an unsubstantiated hope that discovery will uncover a conspiracy involving the moving defendant centered around its payment of an invoice in January 2022.
Accordingly, the Court finds that the complaint, even when read together with the affirmations from Encore's representatives, fails to state a viable claim against the moving defendant. The Court further declines to exercise its discretion to deny the motion under CPLR 3211(d). The motion to dismiss is therefore GRANTED. In light of this decision, the alternative grounds for dismissal raised by the moving defendant have been rendered moot. As such, the Court has not considered or ruled on the merits of the alternative grounds.
IT IS HEREBY ORDERED that the motion to dismiss (Motion No. 2) is granted and the complaint is dismissed as against the Defendant, August DiGiacobbe, III.
This shall constitute the Decision & Order of the Court. No costs are awarded to any party. The Court is hereby uploading the original into the NYSCEF system for filing and entry by the County Clerk. The Court further directs the parties to serve notice of entry in accordance with the Local Protocols for Electronic Filing for Saratoga County.
So-Ordered.Dated: March 5, 2026at Ballston Spa, New YorkHON. RICHARD A. KUPFERMANJustice Supreme CourtEnter.Papers Considered:NYSCEF Document Nos. 1-47

Footnotes

Footnote 1:Another provision in the Contract provides that the first payment "shall be due with the Customer's acceptance with a Letter of Intent" and that the second payment "shall be due on the date of shipping" (NYSCEF Document No. 2, at p. 8).

Footnote 2:This portion of the Contract reads, as follows:
 "(d) This contract shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania. . . . Each party consents to the jurisdiction of the courts located in Pennsylvania, and hereby appoints each officer of AIP as its agent for accepting any process in Pennsylvania. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by the Court of Common Pleas of Allegheny County, Pennsylvania.

 (e) This contract shall be governed by, and construed under, the laws of the Commonwealth of Pennsylvania, all rights and remedies being governed by said laws" (NYSCEF Document No. 2, at p. 11).
Footnote 3:Encore's legal counsel has provided an email from 2024, purportedly from the Chinese manufacturer, which informed Encore's counsel that the MRI Unit was manufactured and finished in the beginning of May 2022, that the machine was never shipped, and that the Chinese manufacturer still had it.